**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **JEFFERSON-PILOT INVESTMENTS, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 10 C 7633** |
| | ) | |
| **CAPITAL FIRST REALTY, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Jefferson-Pilot Investments, Inc. (Jefferson-Pilot) has sued Capital First Realty (Capital First) for breach of its obligations under guaranties executed in connection with certain mortgage loans. Jefferson-Pilot has moved for summary judgment on its claim to enforce Capital First's obligations under the guaranties (Count 1) and its claim for reimbursement of management fees (Count 2). For the reasons stated below, the Court grants the motion on both claims.

### Background

Jefferson-Pilot is a North Carolina corporation with its principal place of business located in Greensboro, North Carolina. Capital First is an Illinois corporation with its principal place of business in Chicago, Illinois.

In 2001, The Lincoln National Life Insurance Company and First Penn-Pacific Life Insurance Company (the initial lenders) loaned Sunset Village Limited Partnership (Sunset Village) $16,000,000. In 2006, the initial lenders loaned Sunset Village another

$8,200,000. In connection with these loans, Sunset Village executed notes[1] as well as various documents by which it pledged property as collateral to secure payment of the loans. Capital First executed limited guaranties for both loans in which it ensured "full and punctual payment, performance and observance by the Borrower of all of the Borrower's obligations to the Lender . . . ." Pl.'s Stat. of Undisputed Facts In Supp. of Its Mot. for Summ. J. (Pl.'s SOF), Ex. B-12. In June 2010, the initial lenders assigned their rights in the notes and collateral documents to Jefferson-Pilot, which is currently the lawful holder and owner of the notes and collateral documents.

The notes provide that upon default and acceleration of the loans, Sunset Village is obligated to pay (1) unpaid principal; (2) unpaid pre-default interest at a rate of 7.76% per annum for the 2001 notes and 6.58% per annum for the 2006 notes; (3) post-default interest at a rate of 11.76% per annum for the 2001 notes and 10.58% per annum for the 2006 notes; (4) a late charge of 5% for "any installment not paid when due"; (5) reasonable attorneys' fees, expenses, and costs associated with any action to collect payment from Sunset Village; and (6) a prepayment premium, discussed in more detail below.

The guaranties each contain a provision that waives Capital First's personal liability except under certain circumstances, one of which is the mortgaged property becoming an asset in a voluntary bankruptcy proceeding. The guaranties provided that in that event, Jefferson-Pilot is not required to proceed first against Sunset Village or

---

[1] Sunset Village executed two notes for the 2001 loan (one for $13,000,000 and the other for $3,000,000) and two notes for the 2006 loan (one for $7,700,000 and the other for $500,000).

any other person or entity before enforcing Capital First's guaranty.

Sunset Village failed to pay the July 2010 monthly installment on the notes. Shortly thereafter, Jefferson-Pilot delivered a notice of default to Sunset Village and demanded payment of the July installment within one week. Sunset Village did not cure the default. Jefferson-Pilot then delivered a notice of acceleration to Sunset Village requesting immediate payment of the principal, interest, prepayment premium fees, and late charges due under the notes. Sunset Village failed to cure the default, so Jefferson-Pilot filed a mortgage foreclosure suit against Sunset Village in state court in late September 2010. About two weeks later, Sunset Village filed a voluntary Chapter 11 bankruptcy petition. As a result, the mortgaged property became an asset in the bankruptcy proceeding.

Jefferson-Pilot alleges that because the mortgaged property became an asset in a voluntary bankruptcy proceeding, Capital First is obligated under its guaranties to pay all of Sunset Village's obligations. Those obligations total $27,179,790.20 plus interest, attorneys' fees, expenses, and costs.[2]

Capital First does not dispute its liability under the guaranties to fulfill Sunset Village's obligations. In addition, it does not contest Jefferson-Pilot's motion for summary judgment regarding Count 2 of the complaint. Capital First's only contention in response to Jefferson-Pilot's summary judgment motion is that Jefferson-Pilot is not entitled to the prepayment premium, which totals $7,971,709.48, because it constitutes

---

[2] Jefferson-Pilot initially sought $25,904,903.09 but amended this amount in its reply brief to account for correct calculation of the prepayment premium, an additional $1,274,887.11.

3

an unenforceable penalty under Illinois law.

## Discussion

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "As to materiality, the substantive law will identify which facts are material…factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (emphasis added). A court may grant summary judgment "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). "[W]hen a case turns on interpretation of an unambiguous contract term, it is ripe for final disposition at the summary judgment stage." *Aetna Life Ins. Co. v. Am. Nat'l Bank & Trust Co. of Chi.*, 956 F. Supp. 814, 816 (N.D. Ill. 1997).

The prepayment premium term in the 2001 notes states:

Upon the occurrence of any Default, under this Note, the Mortgage, or the Collateral Loan Documents during any period when this Note is closed to prepayment, and following the acceleration of maturity of the indebtedness evidences hereby as herein provided, if permitted by applicable law, there shall be due and payable as part of the indebtedness evidenced hereby, an amount equal to the greater (all is calculated by the Holder) of (i) the present value (discounted at the Treasury Rate as hereinafter defined) of the excess (if any) obtained by subtracting the effective annual compounded yield (at the time of such acceleration) of the United States Treasury issues (other than so-called "flower bonds") with maturity dates that match, as closely as possible, the Original Maturity date (the "Treasury Rate") from the effective annual compounded yield of this Note, multiplied by the number of years (and any fraction thereof) remaining between the date of acceleration and the Original Maturity Date (such amount will be computed as if the amount determined in accordance with this subsection (i) were paid in equal

4

> monthly installments after the date of such acceleration through the
> Original Maturity Date); or (ii) five percent (5%) of the outstanding principal
> balance (at the time of acceleration) of this Note.

Pl.'s SOF Ex. B-3, ¶ 13 & Ex. B-4, ¶ 13.  The prepayment premium term in the 2006

notes allows the holder to recover an amount equal to the greater of two figures: (i) the

same U.S. Treasury calculation as in the 2001 notes, or "(ii) One percent (1%) of the

outstanding principal balance (at the time of prepayment) of the Note[s]."  Pl.'s SOF at

Ex. B-8, ¶ 13 & Ex. B-4, ¶ 13.[3]  Capital First argues that the prepayment premiums are

unenforceable penalties under Illinois law.

Illinois contract law distinguishes between liquidated damages clauses, which

are enforceable, and penalty clauses, which are not enforceable.  *Checkers Eight Ltd.*

*P'ship v. Hawkins*, 241 F.3d 558, 561 (7th Cir. 2001).  A contractual term is an

enforceable liquidated damages provision if the following criteria are met:  "(1) the

actual damages from a breach are difficult to measure at the time the contract was

made; and (2) the specified amount of damages is reasonable in light of the anticipated

or actual loss caused by the breach."  *Id.* at 562; *see also Am. Nat'l Bank & Trust Co. of*

*Chi. v. Reg'l Transp. Auth.*, 125 F.3d 420, 440 (7th Cir. 1997); *Lake River Corp. v.*

*Carborundum Co.*, 769 F.2d 1284, 1289 (7th Cir. 1985).  By contrast, "'[w]hen the sole

purpose of the clause is to secure performance of the contract, the provision is an

unenforceable penalty.'"  *River E. Plaza, L.L.C. v. Variable Annuity Life Ins. Co.*, 498

F.3d 718, 722 (7th Cir. 2007) (quoting *Checkers Eight Ltd. P'ship,* 241 F.3d at 562).

---

[3] Though Capital First characterizes the two methods as different choices, that is not
what they are.  The contract expressly provides that Jefferson-Pilot is entitled to use
whichever method yields the larger prepayment premium.

5

The burden of proving that the prepayment premium imposes an unenforceable penalty rests with Capital First, the party resisting the term's enforcement. *See In re AE Hotel Venture*, 321 B.R. 209, 220 (Bankr. N.D. Ill. 2005). "The element common to most liquidated damages clauses that get struck down as penalty clauses is that they specify the same damages regardless of the severity of the breach." *XCO Int'l Inc. v. Pac. Scientific Co.*, 369 F.3d 998, 1004 (7th Cir. 2004); *see also Checkers Eight Ltd. P'ship*, 241 F.3d at 562 ("If the amount of damages is invariant to the gravity of the breach, the clause is probably not a reasonable attempt to estimate actual damages and thus is likely a penalty.").

Capital First does not contest the first element of the test for an enforceable liquidated damages provision, specifically, that the lenders' damages upon prepayment were difficult to measure at the time the parties entered into the contracts. Rather, Capital First contests only the second element of the test. Specifically, it contends that the prepayment premium is an unreasonable estimate of the lenders' damages and thus constitutes an unenforceable penalty. In this regard, Capital First offers two arguments. First, it contends that the amount of the prepayment premiums is unduly large when compared to the principal amount of the notes. Second, it argues that there was another readily available method that would have provided a more accurate estimation of the lenders' damages.

## 1.    Size of prepayment premium

Capital First argues first that the "aggregate of the prepayment premiums sought by Jefferson-Pilot total over thirty four percent of the aggregate amount of the unpaid

principal." Def.'s Resp. to Pl.'s Mot. for Summ. J. (Def.'s Resp.) 10. It argues that as between the methods under the guaranty for calculating the prepayment penalty, the first is "over seven (7) times the amount" that the holder would have received under the second method (five percent of the principal) for the 2001 loan, and "over twenty-seven (27) times the amount" that the holder would have received under the second method (one percent of the principal) for the 2006 loan. *Id.* at 9. Capital First argues that these amounts, particularly when considered together with the higher-rate default interest that Jefferson-Pilot seeks, amount to an unenforceable penalty. (Capital First does not challenge the legality of the default interest provision itself.)

Capital First fails to address the relevant inquiry in determining whether a liquidated damages clause constitutes an unenforceable penalty. "The relevant question under Illinois law . . . is not the size of the liquidated damages amount standing alone. The question is the *relation* between that amount and the projected actual loss." *AE Hotel Venture*, 321 B.R. at 220-21 (emphasis in original). By focusing on the differences between the contractual methods for calculating the prepayment premium rather than the assessed premium's relation to the lenders' projected actual loss, Capital First misses the mark.

In any event, Capital First has failed to show that the prepayment premium as calculated is unreasonable in light of the anticipated loss caused by the acceleration following the default. When a borrower's obligation to repay a loan is accelerated, as Capital First's was when it defaulted, the lender loses "the yield that [it] bargained for over the life of the loan." *River E. Plaza, L.L.C.*, 498 F.3d at 719. A prepayment premium attempts to compensate the lender for this lost yield. Specifically, it

"attempt[s] to account for the expected interest, outstanding principal, and fluctuations in prevailing interest rates." *Id.* at 721; *see also In the Matter of LHD Realty Corp.*, 726 F.2d 327, 330 (7th Cir. 1984) ("Prepayment premiums serve a valid purpose in compensating at least in part for anticipated interest a lender will not receive if a loan is paid off prematurely. . . . [A] prepayment premium insures the lender against loss of his bargain if interest rates decline.").

Jefferson-Pilot argues that a reasonable forecast of damages resulting from the default and acceleration of the loans would include the lost future interest, less a reasonable estimate of the interest the lender reasonably could be expected to earn in the future on the returned principle without taking an undue risk, reduced to present value. *See* Pl.'s Reply in Support of Mot. for Summ. J. at 7. The formula at issue in this case essentially applies this methodology, limiting the premium to the amount by which the interest the lender would have earned had the loans been paid according to their terms exceeds the interest rate for U.S. Treasury bills, generally recognized as risk-free investments.[4] *See In re Caudill*, 82 B.R. 969, 981 (Bankr. S.D. Ind. 1988); *In re Bivens*, 317 B.R. 755, 763 (Bankr. N.D. Ill. 2004). "[T]he unwritten assumption in such a formula is that [the lender] can take the returned principle, invest it in Treasuries, and by taking the income from the Treasuries and adding it to the prepayment fee, [the lender] gets the exact return it expected from the loan." *River E. Plaza*, *L.L.C.*, 498 F.3d at 723. Under the circumstances, no reasonable fact finder could find that the prepayment premiums at issue were an unreasonable estimate at the time of the loans

---

[4] At least at virtually all times in memory other than at the moment.

of the damages the lenders would experience from prepayment.

## 2.    Existence of a more accurate formula for damages

Capital First's second argument is that that the prepayment premium

"overcompensates" Jefferson-Pilot.  It questions "whether the prepayment formula here

really compensates precisely for losses."  Def.'s Resp. at 7, *citing* G. Lefcoe, *Yield*

*Maintenance and Defeasance: Two Distinct Paths to Commercial Mortgage*

*Prepayment*, 28 Real Estate L.J. 202, 203 (2000).

Capital First contends that a more accurate way to compute damages was

available at the time the parties entered into the relevant contracts.  Def.'s Resp. to Pl.'s

Stat. of Undisputed Facts, Ex. A ¶ 10.  It has submitted an affidavit stating that "in light

of the current market for manufactured home communities with risk profiles comparable

to the debtor, [the prepayment premiums] far exceed the damages suffered by the

plaintiff."  *Id.* ¶ 9. [5]

Capital First again misses the relevant inquiry.  "The initial significant inquiry

should be directed to the difficulty of *advance accurate estimation*."  *United Order of*

*Am. Bricklayers and Stone Masons Union No. 21 v. Thorleif Larsen and Son, Inc.*, 519

F.2d 331, 335 (7th Cir. 1975) (emphasis added).  By contrast, Capital First's

comparison is focused on current conditions.

In any event, "[t]he parties are not required to make the best estimation of

damages, just one that is reasonable."  *In re Schaumburg Hotel Owner Ltd. P'ship*, 97

---

[5] Jefferson-Pilot has moved to strike this affidavit.  The Court need not address the motion because the affidavit, even if considered, does not raise a genuine issue of material fact.

B.R. 943, 953 (Bankr. N.D. Ill. 1989). "Accordingly, it makes no difference how much the liquidated damages amount itself is – or for that matter how much the actual loss itself turns out to be – as long as the liquidated damages in the contract were a reasonable forecast of, and bore some relation to, the loss." *AE Hotel Venture,* 321 B.R. at 221; *see also Schaumburg Hotel Owner Ltd. P'ship,* 97 B.R. at 953 ("It is immaterial that the actual damages suffered are higher or lower than the amount specified in the clause"). Capital First's unadorned argument that there was a better way to calculate damages fails to establish that the prepayment premium calculations were an unreasonable estimate of damages at the time the parties entered into the agreements. In any event, as discussed in the previous section, the premium was, in fact, a reasonable estimate at the time the loans were made of the damages the lenders would experience in the event of prepayment.

For these reasons, the Court concludes that no reasonable fact finder could find that the prepayment premiums were unreasonable and thus unenforceable at the time the parties entered into the relevant contracts.

### Conclusion

For the reasons stated above, the Court grants plaintiff's motion for summary judgment as to counts 1 and 2 of its complaint [docket no. 23] and terminates as moot plaintiff's motion to strike [docket no. 39].

MATTHEW F. KENNELLY
United States District Judge

Date: July 18, 2011