**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **JEFFERSON-PILOT INVESTMENTS, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **CAPITAL FIRST REALTY, INC., SUNSET** | ) | |
| **VILLAGE LIMITED PARTNERSHIP, TCF** | ) | |
| **NATIONAL BANK, L H BLOCK ELECTRIC** | ) | |
| **COMPANY, INC., DOHERTY, GIANNINI,** | ) | |
| **REITZ CONSTRUCTION, INC., EAGLE** | ) | |
| **HEATING & COOLING INC., LAYNE** | ) | |
| **CHRISTENSEN COMPANY, and** | ) | |
| **LAYNE-WESTERN,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| -------------------------------------------------------- | ) | **Case No. 10 C 7633** |
| **JEFFERSON-PILOT INVESTMENTS, INC.,** | ) | |
| | ) | |
| **Third-Party Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **CAPITAL FIRST REALTY, INC., THE** | ) | |
| **KLARCHEK FAMILY TRUST, JOHN** | ) | |
| **COSTELLO as trustee of the Klarchek** | ) | |
| **Family Trust, JOHN LOGIUDICE as trustee** | ) | |
| **of the Klarchek Family Trust, WOLIN** | ) | |
| **KELTER & ROSEN, LTD., BAUCH &** | ) | |
| **MICHAELS, LLC, CAPITAL HOME** | ) | |
| **SERVICES CORP., GILSON LABUS &** | ) | |
| **SILVERMAN, LLC, JAY KLARCHEK,** | ) | |
| **MICHAEL PASHAWITZ, and SUNSET** | ) | |
| **VILLAGE LIMITED PARTNERSHIP,** | ) | |
| | ) | |
| **Third-Party Defendants.** | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

MATTHEW F. KENNELLY, District Judge:

Jefferson-Pilot Investments, Inc. has sued Capital First Realty for breach of its obligations under guaranties executed in connection with certain mortgage loans. Jefferson-Pilot has also filed a third-party complaint in which it seeks damages from several individuals and businesses based on the allegedly wrongful distribution of its cash collateral. The third-party defendants ("defendants") have moved to dismiss Jefferson-Pilot's third-party complaint. For the reasons stated below, the Court grants their motions in part and denies them in part.

**Background**

The Court takes the following facts from the third-party complaint and accepts them as true for purposes of the motions to dismiss. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). The Court assumes familiarity with its prior rulings in this case. *See Jefferson-Pilot Invs., Inc. v. Capital First Realty, Inc.*, No. 10 C 7633, 2012 WL 137881 (N.D. Ill. Jan. 18, 2012); *Jefferson-Pilot Invs., Inc. v. Capital First Realty, Inc.*, No. 10 C 7633, 2011 WL 2888608 (N.D. Ill. July 18, 2011).

In 2001 and 2006, Sunset Village Limited Partnership borrowed large amounts of money to start a residential development. Capital First guarantied Sunset Village's loans. In June 2010, the initial lenders assigned their rights in the notes, mortgages, and security interests to Jefferson-Pilot. Shortly thereafter, Sunset Village missed a payment. Jefferson-Pilot delivered a notice of default, but Sunset Village did not pay. Jefferson-Pilot then delivered a notice of acceleration, requesting immediate payment of all amounts due. Sunset Village again failed to cure the default, and Jefferson-Pilot filed a mortgage foreclosure suit against Sunset Village in state court in late September

2

2010.

On October 13, 2010, Sunset Village filed a voluntary petition for Chapter 11 bankruptcy, which automatically stayed Jefferson-Pilot's foreclosure action. This petition was filed the day before a scheduled hearing on Jefferson-Pilot's motion to appoint a receiver. After initial proceedings in the bankruptcy case, Jefferson-Pilot agreed that Sunset Village could use the rents and other proceeds generated from the properties for property maintenance and related expenses, pursuant to periodic "cash collateral orders" entered by the bankruptcy court. The bankruptcy court entered several such orders, the last of which covered the period from May 1, 2011 through May 31, 2011.

Jefferson-Pilot moved the bankruptcy court to dismiss the bankruptcy case or modify the automatic stay to allow for the continuation of the foreclosure action. The bankruptcy court scheduled a hearing on this motion for May 18, 2011. Prior to the hearing, however, Sunset Village's counsel obtained leave to withdraw its appearance in the bankruptcy case. At the May 18, 2011 hearing, the bankruptcy court ruled that Sunset Village could not proceed without counsel and dismissed the case.

After the dismissal, on May 18 and 19, 2011, Capital First, in its role as Sunset Village's manager, disbursed a total of $317,625 from the funds that had been designated as cash collateral to some or all of the third-party defendants. In addition, more than $50,000 was disbursed from Sunset Village's bank accounts later in May. On May 31, 2011, this Court entered a temporary restraining order (TRO) enjoining Sunset Village from disbursing funds contained in two of its bank accounts. At the beginning of the May 31 TRO hearing, Jefferson-Pilot was not yet aware of the funds

3

that had been disbursed, and it argued that it needed the TRO to protect its interests after the expiration of the cash collateral order.

## Discussion

On a motion to dismiss under Rule 12(b)(6), the Court accepts the facts stated in the complaint as true and draws reasonable inferences in favor of the plaintiff. *Hallinan*, 570 F.3d at 820. To survive the motion, the complaint must include enough facts to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949.

Jefferson-Pilot has sued eleven third-party defendants, asserting a total of seven claims against those defendants. Each defendant has filed or joined one of five motions to dismiss, each of which incorporates the relevant arguments from the others. Several arguments appear in multiple briefs. The Court need not reference each iteration of each argument, but it has considered the material in each defendant's submissions and will specifically identify particular briefs when appropriate.

## 1.     Effect of the cash collateral order

As a threshold matter, the parties dispute the effect of the bankruptcy court's May 2011 cash collateral order after that court dismissed the bankruptcy case. Jefferson-Pilot maintains that the order remained in effect and that Sunset Village's violation of its terms provides the element of fraud or bad faith that is required for many of the other claims in the third-party complaint. Defendants argue that dismissal of the bankruptcy case voided the order and freed Sunset Village from any other restraints the bankruptcy

4

had placed on it.

The parties agree that section 349(b) of the Bankruptcy Code establishes the

effect of dismissal:

> (b) Unless the court, for cause, orders otherwise, a dismissal of a case other than under section 742 of this title . . .
>
>> (2) vacates any order, judgment, or transfer ordered, under section 522(i)(1), 542, 550, or 553 of this title; and
>>
>> (3) revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title.

11 U.S.C. § 349(b). A bankruptcy court is authorized to enter cash collateral orders

under section 363.

Jefferson-Pilot cites several cases to support its contention that a bankruptcy

court order can remain in effect after the dismissal of a bankruptcy case. The most

closely analogous case is *In re TNT Farms*, 226 B.R. 436 (Bankr. D. Idaho 1998), in

which a bankruptcy court, in a cash collateral order, had granted a first-priority lien over

certain crop proceeds to one of the debtor's secured creditors. After the case was

dismissed, the creditor commenced an adversary proceeding in the bankruptcy court

seeking to establish the continuing priority of its lien over the liens of other creditors.

The court determined that the plaintiff creditor had first priority in the crop proceeds "by

virtue of its adequate protection liens provided in the cash collateral orders issued by

this Court in connection with TNT's first bankruptcy case." *Id.* at 441. In reaching this

holding, the court observed that "the omission of Section 363 from the language of

Section 349 manifests the intent of Congress to leave orders entered under Section 363

unaffected unless otherwise provided by the Court." *Id.* at 442. The court also noted

5

that the words "[u]nless the Court, for cause, orders otherwise" in section 349(b) "allow[]

the Court, under these appropriate circumstances, to adjust the strict results of

dismissal here." *Id.*

It is not entirely clear whether the court in *TNT Farms* was invoking its power to

"adjust the strict results of dismissal" as a necessary prerequisite to finding that the cash

collateral order continued to establish priority. If so, the case does not support

Jefferson-Pilot's argument that a cash collateral automatically survives dismissal. Even

if the court in *TNT Farms* based its holding solely on the statutory text, however, the

Court respectfully disagrees with its conclusion.

The Bankruptcy Code's definition of cash collateral and the restrictions that the

Code imposes on its use are inextricably intertwined with the pendency of a bankruptcy

case. "Cash collateral" is defined as "cash, negotiable instruments, . . . or other cash

equivalence whenever acquired in which *the estate* and an entity other than the estate

have an interest." 11 U.S.C. §363(a) (emphasis added). The statutory restrictions on

cash collateral establish that "[t]he *trustee* may not use, sell, or lease cash collateral . . .

unless (A) each entity that has an interest in such cash collateral consents; or (B) the

court, after notice and a hearing, authorizes such use, sale, or lease in accordance with

the provisions of this section." 11 U.S.C. § 363(c)(2) (emphasis added). This text

indicates that such restrictions do not survive the dismissal of a bankruptcy case, when

there is no longer an estate – and thus no "cash . . . in which the estate . . . ha[s] an

interest" – or a trustee. *See Matter of Statistical Tabulating Corp.*, 60 F.3d 1286, 1290

(7th Cir. 1995) ("Because the [automatic] stay is dependent on the existence of the

bankruptcy, the dismissal of the case disposed of any dispute about the stay.").

6

In addition, a bankruptcy court's authorization of a debtor's use of cash collateral is neither a final order disposing of a case nor an order that has the attributes of finality. Instead, as an order designed to govern the behavior of the parties while the case is pending, a cash collateral order is similar to a preliminary injunction, which "cannot survive the dismissal of a complaint." *Venezia v. Robinson*, 16 F.3d 209, 211 (7th Cir. 1994). This is particularly true in this case because, unlike the creditor in *TNT Farms*, Jefferson-Pilot is arguing that the cash collateral order governed Sunset Village's actions even after the bankruptcy case in which it was entered was no longer pending, not merely that it established a legal relationship between the parties that affects a subsequent case. As defendants argue, if dismissal of a bankruptcy case did not vacate orders controlling a debtor's behavior, such an order could remain in effect indefinitely, and the (former) bankruptcy debtor that was subject of the order would have no way to know whether or when it was free of the order's restrictions. Although the cash collateral order at issue in this case only covered a defined period, Jefferson-Pilot does not limit its argument that such orders remain in effect to orders that have an expiration date.

The other cases that Jefferson-Pilot cites are likewise distinguishable. A court in Texas cited *TNT Farms* for the proposition that a "bankruptcy court must have the jurisdiction to enforce its own orders which parties have detrimentally relied upon, even after a dismissal, because the opposite result would encourage forum shopping." *In re Goldstar Emergency Med. Servs., Inc.*, No. 05-36446, 2007 WL 208441, at *6 (Bankr. S.D. Tex. Jan. 23, 2007). "If the court's authority over its own orders were always to be terminated after dismissal, a debtor who was unhappy with the bankruptcy court's order

7

could seek to dismiss the case and the creditor's exclusive recourse would be in state court." *Id.* The court's holding, however, was limited to the issue of whether it retained jurisdiction to enforce the terms of a cash collateral order; it did not address the question of whether post-dismissal breach of such an order can provide grounds for a separate lawsuit. To the extent that the court in *Goldstar* adopted the reasoning from *TNT Farms*, the Court does not find it persuasive for the reasons stated above.

Another judge in this district considered a related issue in *In re N.R. Guaranteed Retirement, Inc.*, 122 B.R. 72 (Bankr. N.D. Ill. 1990). In that case, a secured creditor appealed from the bankruptcy court's denial of its motion to prohibit the debtor's use of cash collateral. The bankruptcy case had been dismissed, but the debtor had obtained a stay of dismissal and reinstatement of the automatic stay pending appeal. The district judge concluded that the dismissal of the Chapter 11 case did not deprive it of subject matter jurisdiction over the appeal of the denial of the motion for a cash collateral order. Jefferson-Pilot points out the judge's statement that "the cash collateral order has effects that survive the dismissal – during the course of a bankruptcy case that should never have been filed . . . substantial funds were accumulated that [the] secured creditor . . . could have pursued," but this was not part of any analysis of the issue presented here. Instead, the statement was support for the judge's conclusion that the issue presented a "case or controversy." *Id.* at 74.

The judge concluded that it is "impermissible for a debtor to bring a wholly groundless proceeding and then to use its mere pendency – to use the fact that time was necessarily taken to decide the issue of its groundlessness – to divert funds from its secured creditors and make that diversion a nonreviewable decision." *Id.* at 75. The

8

issue in *N.R. Guaranteed Retirement* was whether the district court itself had jurisdiction over the denial of a cash collateral order – it dealt with actions taken by the parties and the bankruptcy court during the pendency of the bankruptcy.  Although the court referred to the possible lingering effects of issues involving cash collateral, it did not determine that a cash collateral order entered during a bankruptcy case remain in force after the case's dismissal.

Nor did the Seventh Circuit so rule in *Wiese v. Community Bank of Central Wisconsin*, 552 F.3d 584 (7th Cir. 2009).  Although the court in that case approvingly cited *TNT Farms*, it did so in the context of upholding a bankruptcy court's determination that there was "cause" under section 349(b) for the terms of a confirmed bankruptcy plan to remain binding on the parties after dismissal.  *Id.* at 589-90.  As Jefferson-Pilot argues, the Seventh Circuit noted that it was "appropriate for the bankruptcy court to consider the interests of the" creditor in making this determination.  Nowhere, however, did the Seventh Circuit suggest that the terms of either a confirmed bankruptcy plan or a cash collateral order would remain in effect after dismissal of the underlying bankruptcy case, absent a declaration to that effect by the bankruptcy court.  Similarly, the court in *In re Derrick*, 190 B.R. 346, 350-52 (Bankr. W.D. Wis. 1995), discussed the factors that go into a bankruptcy court's "cause" determination, not the effect an order may otherwise have.

The parties dispute whether the bankruptcy court expressly declared the cash collateral order to be moot.  This Court's holding, however, does not depend on the bankruptcy court's characterization of its order – rather, the analysis set out above applies even if the bankruptcy court made no declaration regarding the order's effects

9

upon dismissal.

Finally, Jefferson-Pilot contends that there is "no dispute that the May Cash Collateral Order was also a record of the parties' private, contractual agreement, that remained binding on Sunset Village through May 31, 2011." Pl.'s Resp. at 12. Jefferson-Pilot cites *Aguilera v. Freedman, Anselmo, Lindberg & Rappe, LLC*, No. 10 C 5488, 2011 WL 2292302 (N.D. Ill. June 8, 2011), which concerned an agreed order entered in state court. The court in *Aguilera* determined that the plaintiff could not have altered the order's terms without the defendant's consent, noting that an agreed order under Illinois law is "a record of the parties' 'private, contractual agreement' that 'is generally binding on the parties and cannot be amended or varied without the consent of each party.'" *Id.* at *7 n.5 (quoting *In re Marriage of Rolseth*, 389 Ill. App. 3d 969, 971, 907 N.E.2d 897, 900 (2009)). Neither *Aguilera* nor *Rolseth* examines whether the effect of an agreed order can survive the dismissal of a case, however, and both cases analyze Illinois common law rather than federal bankruptcy law. Jefferson-Pilot provides no other support for this argument, and the Court concludes that it is unavailing. The fact that the parties agreed to entry of the order in the bankruptcy case does not make it into a contract, such as a settlement agreement, that survives the case's dismissal.

For these reasons, the Court concludes that the parties were not bound by the terms of the May 2011 cash collateral order after the bankruptcy judge dismissed the case.

**2.     Judicial estoppel**

A second threshold issue involves defendants' contention that Jefferson-Pilot's

claims are barred by the doctrine of judicial estoppel.  This doctrine "prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding."  *New Hampshire v. Maine*, 532 U.S. 742, 749 (2002).  To establish the application of judicial estoppel, a litigant must show that its opponent successfully made a representation to one tribunal and is attempting to reverse itself before another.  *See In re Airadigm Commc'ns, Inc.*, 616 F.3d 642, 662 (7th Cir. 2010).

Defendants argue that Jefferson-Pilot's claims are barred by this doctrine because it advanced a position before the bankruptcy court and before this Court at the May 18, 2011 TRO hearing that differs from its current position.  Specifically, defendants argue that Jefferson-Pilot formerly claimed that "the dismissal of the bankruptcy case removed any judicial restraint on Sunset Village's use of the cash in its possession and, thus, that it was without an adequate remedy at law," which differs from its current contention that the cash collateral order remained in effect after dismissal.

Because the Court has rejected Jefferson-Pilot's contention that the cash collateral order remained in effect, it need not address this argument further. Defendants argue that Jefferson-Pilot's alleged reversal mandates dismissal of its entire complaint, but Jefferson-Pilot has advanced multiple legal arguments for several of its claims.  Judicial estoppel "aims to prevent a party that prevails in one lawsuit on one ground from repudiating that same ground in another lawsuit."  *Jarrard v. CDI Telecomms., Inc.*, 408 F.3d 905, 914 (7th Cir. 2005).  The application of the doctrine therefore does not affect Jefferson-Pilot's additional arguments.

Even if the Court were to address the issue of judicial estoppel, however,

11

defendants' contentions would be unavailing. First, at the hearing on May 18, 2011, Jefferson-Pilot's counsel asked the bankruptcy court not to dismiss the case, but the bankruptcy court did so anyway. Jefferson-Pilot therefore cannot be said to have "successfully made a representation" before the bankruptcy court. Second, Jefferson-Pilot's arguments before this Court were premised on the theory that the cash collateral order was set to expire on May 31, 2011, necessitating legal protection from that point forward. This is entirely consistent with the allegations of the amended third-party complaint, which are premised on the theory that the order remained in effect until May 31. Finally, judicial estoppel is a doctrine with "antifraud purposes" that is "intended to protect the courts from . . . litigatory shenanigans [and] misconduct." *Id.* at 915. Defendants provide no support for their argument that a litigant that changes its position after learning of previously unknown facts can be said to have engaged in this sort of behavior.

For these reasons, the Court concludes that Jefferson-Pilot's remaining claims are not barred by the doctrine of judicial estoppel.

### 3.    Constructive possession

Jefferson-Pilot argues that it obtained constructive possession of the rents by filing a foreclosure action and seeking the appointment of a receiver. It cites a case in which a bankruptcy court found that "initiat[ing] foreclosure proceedings and obtain[ing] the appointment of a receiver [are] the two ways that mortgagees may gain possession of a property for purposes of collecting rent." *In re Randall Plaza Ctr. Assocs., L.P.*, 326 B.R. 133, 141 (Bankr. N.D. Ill. 2005). Jefferson-Pilot does not dispute, however, that it had not obtained appointment of a receiver before the disbursements occurred.

12

Moreover, the judge in *Randall Plaza* also stated that "courts have allowed mortgagees to collect rents after the mortgagees have taken affirmative action to take possession of the property, by *obtaining* an injunction or by having a receiver *appointed*." *Id.* at 140 (emphasis added). This indicates that a court order, not just initiation of a lawsuit, is necessary for constructive possession. *See Comerica Bank-Ill. v. Harris Bank Hinsdale*, 284 Ill. App. 3d 1030, 1034, 673 N.E.2d 380, 382-83 (1996) ("Courts have recently allowed mortgagees to collect rents after taking some affirmative action . . . such as obtaining judicial intervention by way of injunctive relief [and] once a receiver has been appointed."); *Matter of Wheaton Oaks Office Partners Ltd. P'ship*, 27 F.3d 1234, 1242 (7th Cir. 1994) ("[To] allow creditors the opportunity to reach the rents sooner than the completion of foreclosure proceedings, Illinois allows mortgagees . . . to authorize the appointment of a receiver through whom the mortgagee can begin collecting rents.").

The other cases that Jefferson-Pilot cites similarly concern mortgagees that had actually obtained judicial relief. *See DeKalb Bank v. Purdy*, 166 Ill. App. 3d 709, 716, 520 N.E.2d 957, 961 (1988) (defendant was "ordered to pay into the court future rent received"); *State Bank & Trust Co. v. Massion*, 279 Ill. App. 234, 236 (1935). Jefferson-Pilot argues that there is a difference between those cases, in which a mortgagee sought to collect rent going forward, and this one, in which the mortgagee claims a right in rent previously collected. Jefferson-Pilot also argues that those cases were about possession of the property, whereas this case is about possession of money in Sunset Village's accounts. It offers no legal support for the proposition that these factors distinguish this case, however, and the Court concludes that the arguments are unavailing.

Jefferson-Pilot also argues that the cash collateral order and the TRO gave it constructive possession of the rental amounts. The Court has already ruled, however, that the order's effects did not survive the dismissal of the bankruptcy case.

For these reasons, the Court concludes that Jefferson-Pilot was not in constructive possession of the property or the rents between the dismissal of the bankruptcy case and the entry of the TRO.

## 4.     Count one

In count one of its third-party complaint, Jefferson-Pilot asserts a claim against all third-party defendants except Klarchek and Pashawitz under the Illinois Uniform Fraudulent Transfer Act (IUFTA), 740 ILCS 160/5(a)(1). That portion of the statute provides that "[a] transfer made . . . by a debtor is fraudulent as to a creditor . . . if the debtor made the transfer . . . with actual intent to hinder, delay, or defraud any creditor of the debtor." Jefferson-Pilot seeks avoidance of the transfers under 740 ILCS 160/8. Jefferson-Pilot alleges that Capital First made the disbursements

> with full knowledge that the funds being used were (i) Cash Collateral of Jefferson-Pilot; (ii) being disbursed in violation of Sunset Village's agreement not to use the Cash Collateral in any manner other than as agreed in the budget attached to and incorporated within the May Cash Collateral Order; and (iii) with actual intent to hinder, delay and/or defraud Jefferson-Pilot.

Am. Third-Party Compl. ¶ 40.

Defendants argue that Jefferson-Pilot has not pleaded the claim with sufficient particularity under Federal Rule of Civil Procedure 9(b) and that it cannot show that the transfers were made with the requisite intent because they were good-faith payments for debts owed by Sunset Village. "A transfer or obligation is not voidable under paragraph (1) of subsection (a) of Section 5 against a person who took in good faith and

for a reasonably equivalent value or against any subsequent transferee or obligee." 740 ILCS 160/9(a).

The Court need not address these arguments for purposes of this claim, due to its ruling that the bankruptcy court's cash collateral order no longer governed Sunset Village's use of the amounts at issue after dismissal of the bankruptcy case. The language of the complaint indicates that Jefferson-Pilot's contention that Capital First disbursed money with intent to defraud is based solely on its allegation that Capital First acted in violation of the cash collateral order. Although the language of the IUFTA arguably might a claim that Capital First made the disbursements with the required intent even if it did not believe itself bound by the cash collateral order, the complaint does not squarely assert such a claim. The Court therefore grants defendants' motion to dismiss count one.[1]

### 5.    Count two

In count two, Jefferson-Pilot asserts a claim under the IUFTA, 740 ILCS 160/5(a)(2) and 6(a), against all third-party defendants except Klarchek and Pashawitz. The first of these provisions establishes that

[a] transfer made . . . by a debtor is fraudulent as to a creditor, whether the

---

[1] The Court notes, in connection with the dismissal of this and other claims, that the circumstances surrounding the defendants' apparently near-immediate disbursement and receipt of the funds after the bankruptcy case was dismissed may give rise to a plausible inference of an intent to hinder or defraud. Thus Jefferson-Pilot may be able to amend to assert a viable claim under section 5(a)(1) or other legal theories, though it may not premise such a claim on the cash collateral order's continuing effect. That, however, does not mean that Jefferson-Pilot may not rely on the sequence of events including the entry of that order, the dismissal of the bankruptcy case, the subsequent transfers, and other relevant events to support an amended fraudulent transfer claim.

creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer . . . without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

> (A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

> (B) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

740 ILCS 160/5(a)(2). The second provision states:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

740 ILCS 160/6(a).

Jefferson-Pilot alleges that Capital First, as the guarantor of Sunset Village's obligations, was prohibited from receiving any money until Jefferson-Pilot was paid. "Therefore, Capital First had no valid claim against Sunset Village and Sunset Village received no consideration in exchange for the Disbursements made to Capital First." Am. Third-Party Compl. ¶ 45. Jefferson-Pilot alleges that the Klarchek Trust is not a creditor of Sunset Village and therefore provided no value to Sunset Village in exchange for its disbursements. Finally, Jefferson-Pilot alleges that "[u]pon information and belief, the other Third-Party Defendants did not receive reasonably equivalent value in exchange for the Disbursements they received, which shall be further determined during discovery." *Id.* ¶ 47.

Defendants again argue that Jefferson-Pilot has not pleaded the claim with sufficient particularity under Federal Rule of Civil Procedure 9(b). The Seventh Circuit,

however, has held that a cause of action for constructive fraud under IUFTA "requires neither evidence of actual intent to defraud nor a specific misrepresentation by the defendant." *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1079 (7th Cir. 1997). The court found a complaint that appears to have alleged nothing more than Jefferson-Pilot's complaint – that the transferor "allegedly did not receive . . . any reasonably equivalent value that would be applied to the deficiency due [plaintiff]" – sufficient under Rule 9(b). *Id.* at 1080. Because Jefferson-Pilot's allegations are substantially similar to those at issue in *General Electric Capital*, the Court concludes that the complaint comports with the requirements of Rule 9(b).

The fact that the allegations against defendants are sufficiently clear to put them on fair notice of the claims against them is also shown by the fact that each defendant submits evidence to show that the disbursements were payments of antecedent debts or otherwise in return for "reasonably equivalent value." The Court, however, cannot properly consider this evidence on a motion to dismiss. The Seventh Circuit in *General Electric Capital* rejected an argument that the transfer at issue did not constitute constructive fraud because it was a permissible way for a debtor to repay a creditor, finding it "inappropriate . . . to address these challenges to . . . well pleaded assertions on review of a motion to dismiss." *Id.* at 1079 n.3. Defendants do not respond to this argument except to request the conversion of their motions to motions for summary judgment, which the Court declines to do.

For these reasons, the Court denies defendants' motion to dismiss count two.

## 6.    Count three

Jefferson-Pilot also asserts a claim against Capital First and Capital Services for

constructive fraudulent transfer. Jefferson-Pilot relies on section 160/6(b) of IUFTA, which establishes that "a transfer made by a debtor is fraudulent as to a creditor . . . if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent." 740 ILCS 160/6(b). Jefferson-Pilot identifies Capital First and Capital Services as "insiders of Sunset Village" and alleges that the disbursements to them "were made on account of antecedent debts owed to them by Sunset Village at a time when both Capital First and Capital Services knew that Sunset Village was insolvent." Third-Party Am. Compl. ¶ 51.

Capital First argues that these "allegations are so lacking that it is impossible to parse exactly what the Plaintiffs are pleading." Capital First's Mem. at 5. The Court disagrees with this contention as it relates to Capital First. Jefferson-Pilot alleges that Capital First acted as the "property manager for Sunset Village," Third-Party Am. Compl. ¶ 8, and that the "[d]isbursements were made at the direction of Capital First, managing agent for Sunset Village." *Id.* ¶ 40. "[A] managing agent of the debtor" is among the statutory definitions of "insider." 740 ILCS 160/2(g)(5). Jefferson-Pilot has clearly alleged that Capital First, as the managing agent, received disbursements at its own direction on account of antecedent debts despite its knowledge that Sunset Village was insolvent. Capital First has argued that the disbursements accounted for its management fees, which accrued contemporaneously and therefore were not "antecedent," but this is contrary to the allegations of the complaint and the Court will not consider it on a motion to dismiss under Rule 12(b)(6).

The complaint, however, mentions Capital Services only twice outside of the

18

specific allegations in count three:  one statement describes Capital Services as "an Illinois corporation with its principal place of business located in the city of Chicago, Illinois," Third-Party Am. Compl. ¶ 9, and another alleges that Capital Services received $14,000 as part of the disbursements.  *Id.* ¶ 26.  The complaint contains no statement regarding how Capital Services is an "insider" of Sunset Village.  Under the looser standard for IUFTA claims that the Court described in the previous section, courts have upheld claims by plaintiffs who simply "gave a general outline of the scheme sufficient to alert the defendants as to their alleged role."  *Mamacita, Inc. v. Colborne Acquisition Co.*, No. 10 C 6861, at *7 (N.D. Ill. Mar. 11, 2011).  Jefferson-Pilot's allegations regarding Capital First meet this standard, but those regarding Capital Services do not.

For these reasons, the Court grants defendants' motion to dismiss count three as to Capital Services but denies it as to Capital First.

### 7.    Count four

Jefferson-Pilot asserts a claim for unjust enrichment against all third-party defendants except Klarchek and Pashawitz, alleging that defendants "knew that they were not entitled to receive the Disbursements because, upon information and belief, they knew that Jefferson-Pilot had a valid, perfected first-priority secured interest in those funds as is evidenced by the May Cash Collateral Order."  Third-Party Am. Compl. ¶ 54.  "Pursuant to the Contract, the amounts were to be held in trust for the benefit of Jefferson-Pilot."  *Id.* ¶ 55.

As with count one, Jefferson-Pilot alleges no factor that renders the enrichment "unjust" other than Sunset Village's alleged violation of the cash collateral order.  The Court has ruled that the order had no effect violated after the bankruptcy case was

19

dismissed.  The Court therefore grants defendants' motion to dismiss count four.

## 8.    Count five

In count five, Jefferson-Pilot asserts that Capital First, Klarchek, and Pashawitz,

as or through officers and/or directors of Sunset Village, breached or aided and abetted

the breach of fiduciary duties owed to Jefferson-Pilot.  Defendants argue that Jefferson-

Pilot, as an individual creditor, may not sue a director of an insolvent corporation for

breach of fiduciary duty.

The Seventh Circuit has found that "a single creditor may not maintain an action

on his own behalf against a corporation's fiduciaries if that creditor shares in an injury

common to all creditors and has personally been injured only in an indirect manner."

*Koch Ref. v. Farmers Union Cent. Exch., Inc.*, 831 F.2d 1339, 1349 (7th Cir. 1987).  The

court recently reaffirmed this holding in *In re Teknek, LLC*, 563 F.3d 639, 646 (7th Cir.

2009).  Jefferson-Pilot contends that the purpose of this aspect of the doctrine of

standing is "to avoid the creditor's receipt of all the proceeds of a judgment when those

proceeds should be equally shared with other creditors," an outcome that would not

occur in this case because the cash in Sunset Village's accounts was Jefferson-Pilot's

cash collateral.  Pl.'s Resp. at 37.  Because the Court has held that designation of the

money as cash collateral had no legal effect after the dismissal of the bankruptcy case,

however, this argument is unavailing.  The Court therefore grants defendants' motion to

dismiss count five.

## 9.    Count six

In count six, Jefferson-Pilot asserts a claim against several defendants for

tortious interference with a contractual relationship.  Jefferson-Pilot alleges that there

20

was a valid and enforceable contract between Jefferson-Pilot and Sunset Village authorizing the use of cash collateral for the month of May 2011; the recipients knew of this contract; and they unjustifiably induced Sunset Village to breach it.  Because the Court has determined that the cash collateral order had no effect after the dismissal of the bankruptcy case, and because Jefferson-Pilot has offered no support other than what the Court discussed above for the proposition that the order had the force of a private agreement after the bankruptcy case, the Court concludes that there was no existing contract with which defendants could have tortiously interfered.  The Court therefore grants defendants' motion to dismiss count six.

**10.     Count seven**

Jefferson-Pilot asserts a conversion claim against six defendants, arguing that it had "rights in the Personal Property because, pursuant to the May Cash Collateral Order, the Cash Collateral belonged to it either actually or through constructive trust." Third-Party Am. Compl. ¶ 79.  After dismissal of the bankruptcy case, "Sunset Village was required to retain possession of Jefferson-Pilot's Cash Collateral in trust, and Jefferson-Pilot had the absolute and unconditional right to immediate possession of its Personal Property." *Id.* ¶ 80.  The allegations in the complaint do not make it entirely clear what Jefferson-Pilot believes to be the source of this right.  Jefferson-Pilot clarifies this in its brief, contending that it had a right to the money in Sunset Village's accounts because "it was in constructive possession of the Property and the rents" and "pursuant to the May Cash Collateral Order . . . the Bankruptcy Court expressly found that [Jefferson-Pilot] had a perfected security interest in Sunset Village's cash."  Pl.'s Resp. at 38.  As the Court has previously explained, both of these arguments fail.  The Court

21

therefore grants defendants' motion to dismiss count seven.

## Conclusion

For the reasons stated above, the Court grants defendants' motions to dismiss in part [docket nos. 245, 252, 254, 255].  The motions are denied with respect to count two against all defendants and count three against defendant Capital First.  The motions are otherwise granted.  The case remains set for a status hearing on May 30, 2012 at 9:30 a.m.

s/ Matthew F. Kennelly
_____
MATTHEW F. KENNELLY
United States District Judge

Date:  May 29, 2012